UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| AARON HARLOW, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:18-cv-00530-JMS-DLP |
| ZACHARY WORLEY, et al. | ) ) | |
| Defendants. | ) ) | |

**Order Granting Defendant Zachary Worley's Motion for Summary Judgment**

Plaintiff Aaron Harlow, an inmate of the Indiana Department of Correction ("IDOC") at the Wabash Valley Correctional Facility ("WVCF"), brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants failed to provide him adequate medical care after he fell and injured his face. Defendant Zachary Worley moves for summary judgment on the claims against him. Mr. Harlow has responded, Dr. Worley has replied, and Mr. Harlow has filed a sur-reply.[1]

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896

---

[1] Dr. Worley moves to strike Mr. Harlow's sur-reply. But Dr. Worley presented new evidence in support of his reply. In that respect, Mr. Harlow's sur-reply is appropriate. Local Rule 56-1(d). The Court will address Dr. Worley's specific evidentiary objections to the sur-reply as necessary.

(7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Facts

According the Complaint, Mr. Harlow slipped in the shower at WVCF, injuring the zygomatic region of his face on December 1, 2017. Dkt. 2, p. 4. He was taken to Terre Haute Regional Hospital ("the Hospital") for treatment of his injuries. *Id.* Dr. Worley was the attending physician on duty in the Emergency Room when Mr. Harlow arrived at the Hospital. Dkt. 50-1, ¶ 3. In his role as an emergency medicine physician, Dr. Worley treats all patients who present to the Emergency Room, some of which include prisoners. Dkt. 50-1, ¶ 2.

Dr. Worley noted that Mr. Harlow had mild swelling to the left temporal region of his head, but no other deformity. Dkt. 50-1, ¶ 4. Based upon Mr. Harlow's complaints and exam, Dr. Worley ordered a CT scan of the head and cervical spine. *Id.* The radiologist reported the CT imaging as negative, indicating no fracture or other condition that would warrant hospitalization or further acute care. *Id.*, ¶ 6. Dr. Worley did not interpret the CT scan. *Id.* ¶ 5. Given the negative CT scan, Dr. Worley discharged Mr. Harlow back to the prison with instructions to apply ice, take

acetaminophen or ibuprofen for pain and to follow-up with the prison medical staff with any concerns about continued swelling, deformity, or other issue. *Id.*, ¶ 7. This was Dr. Worley's only interaction with Mr. Harlow. *Id.*, ¶ 9.

Dr. Worley is not employed by the State of Indiana and does not have a contractual relationship with the State of Indiana. Dkt. 94-2, ¶ 2. He worked as an independent contractor of Edelbrook Emergency Physicians. *Id.* Edelbrook Emergency Physicians contracted to provide physicians for emergency department coverage pursuant to an agreement between HCA-EmCare Holdings, LLC and the Hospital. *Id.* Dr. Worley has no personal knowledge of any contractual relationships between Edelbrook Emergency Physicians, LLC, HCA, EmCare Holdings, LLC, or the Hospital and the IDOC or Wexford of Indiana, LLC, the prison medical care provider. *Id.*, ¶ 4. Edelbrook Emergency Physicians has no contract with the State of Indiana, the IDOC, or Wexford. Dkt. 94-3, ¶ 4. HCA-EmCare Holdings, LLC has no contract with the State of Indiana, the Ind. Dept. of Correction, or Wexford. *Id.*, ¶ 5.

Dr. Worley treats an incarcerated individual once or twice a month. Dkt. 94-3, ¶ 5. Dr. Worley is obligated to provide emergency medical services to any patient presenting to him at the Emergency Room, regardless of their status as an incarcerated individual. *Id.*, ¶ 6. Dr. Worley testifies that there is no special area or holding area in the Emergency Room designated for incarcerated individuals. *Id.* at ¶ 7. Dr. Worley thus states that he saw Mr. Harlow just as if he had walked into the Emergency Room off the street. *Id.* Mr. Harlow contends, however, that he was seen in a "secure ward." Dkt. 99, p. 9. Dr. Worley states that the care he provided to Mr. Harlow was not dictated in any manner by the State or by Mr. Harlow's status as an incarcerated individual. Dkt. 94-3, ¶ 9. Dr. Worley provided the care he believed necessary for Mr. Harlow. *Id.* The

emergency room care Dr. Worley provided to Mr. Harlow was not meant to be a substitute for the care provided by Mr. Harlow's physicians at the prison. *Id.*, ¶ 10.

### III. Discussion

Dr. Worley seeks summary judgment arguing that he cannot be held liable under § 1983. To prove a § 1983 claim, Mr. Harlow must demonstrate "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon [him] by a person or persons acting under color of state law." *Reynolds v. Jamison,* 488 F.3d 756, 764 (7th Cir.2007) (alteration in original) (quoting *Kramer v. Vill. of North Fond du Lac,* 384 F.3d 856, 861 (7th Cir.2004)).

Dr. Worley argues that he cannot be held liable under § 1983 because he was not a state actor when he treated Mr. Harlow. It is undisputed that Dr. Worley is not a state employee. The Court therefore must determine whether Dr. Worley, as a private individual, "acted under color of state law." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009).

The Seventh Circuit has identified four factors that guide this inquiry. *See id*. at 824-28. These are: (1) the setting in which the medical care was rendered; (2) the influence of the State and the defendant's in-custody status on the medical care provided; (3) whether the healthcare provider voluntarily entered into its relationship with the State and the detainee; and (4) the directness of the relationship between the healthcare provider and the detainee. *Id.* These factors were derived from *West v. Atkins,* 487 U.S. 42 (1988), where the Supreme Court held that a physician employed by the State to provide medical care to prisoners acts under the color of state law for the purposes of § 1983, as "[s]uch conduct is fairly attributable to the State." *Id.* at 54. In the end, "what is fairly attributable to the state 'is a matter of normative judgment, and the criteria lack rigid simplicity.'" *Rodriguez*, 577 F.3d at 828 (quoting *Brentwood Academy v. Tenn.*

*Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001)). The Court will consider each of the four factors.

1. *Setting*

The first factor the Court must consider "is the setting in which the medical care is rendered." *Rodriguez,* 577 F.3d at 826. When a doctor treats a patient in a "correctional setting" the doctor is "affected by that setting in the performance of his medical functions." *Id.*

The parties do not dispute that Dr. Worley treated Mr. Harlow at the Hospital and not at WVCF. However, not all "medical advice rendered outside of the prison walls is exempt from the state action doctrine simply because it is provided outside the prison." *Id.* Dr. Worley states that he examined Mr. Harlow like any other patient who comes to the Emergency Room, while Mr. Harlow contends that he was seen in a secure ward at the Hospital. Dr. Worley argues that Mr. Harlow's evidence on this point is inadmissible and should be disregarded, but Mr. Harlow has submitted an affidavit stating that he was seen in a secure ward. Dkt. 99, p. 9-10.

2. *Influence of the Patient's Status*

Next, the Court must "assess the degree to which the professional decisions made in rendering the care are influenced by the status of the patient as a prisoner and the directives of the state, as the ultimate responsible party for the prisoner's health care, with respect to the manner and the mode of care." *Id.* at 827. Here, Dr. Worley treated Mr. Harlow on one occasion for his injuries. Dr. Worley testifies that his status as a prisoner did not impact his treatment decisions and was not dictated by the State. While Mr. Harlow argues that Dr. Worley ignored his injuries, he has not provided evidence that, even if this is true, this was based on his status as a prisoner. There is therefore no evidence to support a conclusion that Mr. Harlow's "status as a prisoner" or the "directive of the state" influenced Dr. Worley's work.

3. *Voluntariness of Relationship*

The third factor the Court must assess is "whether the private health care provider has entered into its relationship with the state and the prisoner on a voluntary basis." *Rodriguez,* 577 F.3d at 827. Although the presence or absence of a contractual relationship between the state and medical care provider to provide medical services to those in custody should not be the focus of the inquiry, it should be considered in assessing the voluntariness of the relationship, as it is "the principal way" by which a private person or entity voluntarily undertakes the responsibilities of the State for the care of its prisoners. *Id*

Dr. Worley has no contract with the State of Indiana or the Indiana Department of Correction. He is not an employee of the Hospital. No entity that Dr. Worley contracts with or subcontracts with has a contractual relationship with the State of Indiana, IDOC, or Wexford. Mr. Harlow asserts that the Hospital has a contract with Wexford, but he has not provided competent evidence to support this assertion.[2] Further, even if Wexford and the Hospital do have a contract, it is undisputed that Dr. Worley is not an employee of the Hospital. There is no evidence that Dr. Worley's actions were dictated or influenced by the State.

4. *Relationship between the Medical Provider and the Prisoner*

Finally, the Court must assess "the relationship of the private provider to the prisoner." *Rodriguez,* 577 F.3d at 828. This is because, "in order to be liable *as the state* for the provision of medical services, the private provider must have a direct, not an attenuated, relationship with the prisoner-patient." *Id.* (emphasis in original). "To the degree that a private entity does not replace, but merely assists the state in the provision of health care to prisoners, the private entity's responsibility for the level of patient care becomes more attenuated, and it becomes more difficult

---

[2] Mr. Harlow submits an incomplete and unauthenticated document that states that Wexford has a contract in place with the Hospital.

to characterize its actions as the assumption of a function traditionally within the exclusive province of the state." *Id.*

The relationship between Dr. Worley and Mr. Harlow was attenuated. He examined Mr. Harlow only once, ordered a CT scan, and then discharged him to follow up with his prison doctors.

5. *Balancing of Factors*

The Supreme Court in *West* explained, "the dispositive issue concerns the [trilateral] relationship among the State, the physician, and the prisoner." *Id.* at 56. Based on its consideration of the factors outlined above, the Court concludes that the relationship among the State, Dr. Worley, and Mr. Harlow was too attenuated to conclude that Dr. Worley acted under color of state law. Because Dr. Worley treated Mr. Harlow in his capacity as an independent contractor for Edelbrook Emergency Physicians, LLC, he had very little relationship with the State or Wexford. Moreover, because Dr. Worley saw Mr. Harlow only once in the Emergency Room and then discharged him to the care of his prison doctors, he had an attenuated relationship with Mr. Harlow. In addition, while it is disputed whether Dr. Worley treated Mr. Harlow in a secure ward, there is no evidence to support a conclusion that his conclusions were influenced by Mr. Harlow's status as a prisoner or by any relationship Dr. Worley had with the State. Accordingly, the Court finds as a matter of law that Dr. Worley was not acting under color of state law when he treated him in the emergency room.

## IV. Conclusion

For the foregoing reasons, Dr. Worley's motion for summary judgment, dkt. [48], is **granted**. Dr. Worley's motion to strike, dkt. [100], is **denied**. The claims against Dr. Worley are dismissed and Dr. Worley shall be **terminated** as a defendant. No partial final judgment shall issue.

**IT IS SO ORDERED.**

Date: 2/7/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

AARON HARLOW
110167
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel